# United States Court of Appeals
## For the First Circuit

Nos. 14-1963
     14-1964
     14-2074

UNITED STATES OF AMERICA,

Appellee, Cross-Appellant,

v.

DAVID E. GORSKI,

Defendant, Appellant, Cross-Appellee,

LEGION CONSTUCTION, INC.,

Interested Party, Appellant, Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Tracy A. Miner, with whom Megan A. Siddall and Demeo LLP were
on brief, for Gorski.
Martin G. Weinberg, with whom Kimberly Homan was on brief,
for Legion Construction, Inc.
Jennifer Hay Zacks, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
the United States.

_____

December 9, 2015

_____

LYNCH, **Circuit Judge**.   These interlocutory appeals are from a district court order that, among other things, compels the law firm of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. (Mintz Levin) to produce certain documents pertaining to a fraud allegedly committed by David Gorski in his operation of Legion Construction, Inc. (Legion).   Gorski and Legion appeal the district court's order that attorney-client privileged documents be produced under the crime-fraud exception.   The prosecution cross-appeals the district court's decision to exclude communications between Gorski and his personal attorney, Elizabeth Schwartz, from the production order.   We conclude that we have jurisdiction over Legion's appeal and the prosecution's cross-appeal, but not over Gorski's appeal.   We dismiss Gorski's appeal for want of appellate jurisdiction.   We affirm the production order as to Mintz Levin. We vacate the district court's decision to exclude Gorski's communications with Schwartz from the production order and remand that portion of its order.

I.

The prosecution alleges that from about late 2005 to about November 2010, Gorski fraudulently represented to federal government agencies that Legion was a Service-Disabled Veteran Owned Small Business Entity (SDVOSB) in order to qualify for and obtain government contracts.

By statute, at least three percent of all government contracts must go to SDVOSBs.  15 U.S.C. § 644(g)(1)(A)(ii).  To qualify as an SDVOSB, an entity must be at least fifty-one percent owned by one or more service-disabled veterans.  13 C.F.R. § 125.9; 38 C.F.R. § 74.3.  The entity must also be controlled by one or more service-disabled veterans, meaning that both long-term decision-making and day-to-day management are conducted by service-disabled veterans.   13 C.F.R. § 125.10(a); 38 C.F.R. § 74.4(a), (c)(1).  Before February 8, 2010, the service-disabled veteran owners were not required to work full time but had to "show sustained and significant time invested in the business."  38 C.F.R. § 74.4(c)(1) (2008).  Effective February 8, 2010, the regulations were amended to require that a service-disabled veteran owner "work full-time in the business."  38 C.F.R. § 74.4(c)(1) (2010).  The February 8, 2010, amendment also eliminated the self-certification procedure that had been in effect for SDVOSBs, replacing it with a formal verification process.  38 C.F.R. § 74.2.  The essence of the criminal case against Gorski is that Gorski, a non-veteran, made false statements about the ownership, operation, and control of Legion to appear to be in compliance with the SDVOSB eligibility requirements while retaining effective ownership and control of the company for himself.

The prosecution alleges the following facts. Around late 2005, Gorski approached Veteran A, a service-disabled veteran, to start a construction business targeting SDVOSB contracts. Gorski told Veteran A that he wanted Veteran A's involvement for his "veteran status." Gorski filed a certificate of incorporation for Legion in January 2006, with Veteran A listed as president and himself as vice president.

From January 2006 to August 2007, Veteran A was nominally the fifty-five percent owner of Legion. In August 2007, Gorski caused Legion to undergo a corporate restructuring in which Gorski became a nominal forty-nine percent owner, Veteran A became a nominal eleven percent owner, and Veteran B -- also a service-disabled veteran -- became nominal owner of the remaining forty percent. However, Veteran A received no compensation for the stock that he relinquished. Meanwhile, Gorski retained effective control of Legion by having the veterans execute demand notes payable to Gorski and secured by their shares of Legion stock, as well as by having them sign employment agreements that allowed Gorski to terminate their employment with Legion for cause. Gorski also placed his wife on Legion's payroll even though she had full-time employment elsewhere, as a disguised method to pay himself more money than he was paying the veterans. Throughout this time, Legion was awarded government contracts based on representations that it qualified as an SDVOSB.

In late 2009, Legion retained Mintz Levin in anticipation of the February 8, 2010, amendment in regulatory criteria for SDVOSBs. Mintz Levin effected a corporate restructuring under which Veteran B purchased Veteran A's remaining stock, resulting in Veteran B nominally owning fifty-one percent of Legion's shares and Gorski nominally owning forty-nine percent. Although the purchase did not occur until March 23, 2010, the documents were dated "as of" February 1, 2010 -- before the date of the regulatory amendments.

At some point, Gorski also engaged Elizabeth Schwartz, an attorney unaffiliated with Mintz Levin, for legal advice related to the 2010 restructuring.

On March 8, 2010, one of Legion's competitors filed a bid protest with the U.S. Small Business Administration (SBA) challenging Legion's SDVOSB status. The protest related to a bid submitted by Legion on January 11, 2010. On April 5, 2010, Legion, with the assistance of Mintz Levin, filed a response to the SBA. The response included new corporate documents prepared by Mintz Levin purporting to show that Legion restructured on February 1, 2010. The record supports the district court's finding that the new corporate documents were crafted so as to make it appear that they were signed before the date of the SBA regulatory amendments, when they were not, and that an affidavit that flatly swore under penalty of perjury that Veteran B purchased the stock on February

1, 2010, was false.  Further, it is plain that Gorski likely knew that his lawyers' handiwork could lead SBA to believe that which was false.

Between July 29, 2010, and November 19, 2010, Gorski had discussions with Legion's accountant about circumventing the SDVOSB regulations that require the service-disabled veteran owner to be the company's highest paid officer.  Gorski and Legion's accountant discussed a plan under which Gorski would receive additional, hidden compensation in a special bank account.

On October 23, 2012, Gorski was indicted for one count of conspiracy to defraud the United States and four counts of wire fraud, in violation of 18 U.S.C. §§ 371 and 1343.

On July 21, 2014, the prosecution issued subpoenas to Legion and Mintz Levin under Federal Rule of Criminal Procedure 17(c).  The subpoenas required the production of documents from November 2009 to December 2010 concerning Legion's ownership and SDVOSB eligibility; negotiations and transfers of Legion stock involving Gorski, Veteran A, and Veteran B; and the March 2010 bid protest filed against Legion.  Mintz Levin and Legion withheld production of certain documents on the basis of attorney-client privilege.

On August 7, 2014, the district court granted the prosecution's motion that the court conduct an in camera examination to determine whether the crime-fraud exception to the

attorney-client privilege applied. Mintz Levin and Legion submitted thousands of pages of documents for the district court's review. On September 4, 2014, the district court held an ex parte hearing with defense counsel and, upon concluding that the crime-fraud exception to the attorney-client privilege applied, ordered that all of the contested documents be produced.

On September 8, 2014, Gorski filed an ex parte motion for reconsideration of the September 4 order as overbroad with respect to seven categories of documents. Also on September 8, 2014, Legion, which is not a party to the criminal case, filed a motion to intervene and to stay the September 4 order, along with a motion to conduct a de novo hearing on the crime-fraud exception. The district court granted Legion's motion and, on September 11, 2014, held an ex parte hearing with counsel for Legion and Gorski.

On September 12, 2014, the district court issued an order granting in part and denying in part the motion for reconsideration. As an initial matter, the district court found that all of the documents at issue were relevant and facially privileged. The only issue was whether the crime-fraud exception applied. The district court began its analysis by stating that it considered the grand jury indictment of Gorski to be "conclusive evidence" of probable cause to believe that Gorski committed a crime or fraud. The district court then reasoned that "there is a reasonable basis to believe that Gorski intended to, and did,

use the services of the lawyers" in furtherance of that crime or fraud.  The district court found that it was reasonable to believe that Gorski intended to use Mintz Levin's services to "perpetuate [an] ongoing scheme" in which he "maintain[ed] effective ownership and control of Legion, while maintaining its apparent status as a[n] SDVOSB."

However, the district court granted the motion to reconsider as to category three of the documents, which consisted of communications between Gorski and his personal attorney, Schwartz, in relation to the 2010 restructuring.  The district court found that although "[t]he basic intent of those communications is arguably the same as his communications with Mintz Levin, . . . Ms. Schwartz apparently had no role in the submission to the SBA."  The district court concluded that under the circumstances, it would "not make the necessary finding" as to the applicability of the crime-fraud exception.  The district court also determined, without explaining its reasoning on the record, that the crime-fraud exception did not apply to documents in categories one, two, five, and six of the motion for reconsideration.  The district court ordered Legion and Mintz Levin to produce all of the contested documents not encompassed by those categories.

Legion and Gorski filed separate notices of appeal. Legion limited its appeal to the portion of the district court

order requiring production of documents by Mintz Levin.  The district court has stayed its production order as to Mintz Levin pending appeal.  The district court has stayed and held in abeyance its independent production order as to Legion, pending resolution of this appeal as to the Mintz Levin order.

II.

"Ordinarily, litigants may not seek immediate appeal of discovery orders because they are not final decisions and orders of the district court."  Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 397 (1st Cir. 2005); see also FDIC v. Ogden Corp., 202 F.3d 454, 458 (1st Cir. 2000).  A target of a discovery order can gain an immediate right of appeal by refusing to comply with a discovery order, being held in contempt by the district court, and then appealing the contempt order.  Gill, 399 F.3d at 397.  However, none of the parties to this appeal have been held in contempt.  Examining the alternative bases upon which the parties claim appellate jurisdiction to challenge the discovery order, we conclude that we do not have jurisdiction over Gorski's appeal but that we do have jurisdiction over Legion's appeal and the prosecution's cross-appeal.

Gorski relies solely on the collateral order doctrine as the basis for appellate jurisdiction.[1]  The collateral order

---

[1]  The prosecution points out an antecedent issue explicitly left open by the district court: whether Gorski can

- 10 -

doctrine allows immediate appeal of a "small class" of decisions that do not end the litigation but are nonetheless considered "final" and thus immediately reviewable. <u>Cohen</u> v. <u>Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 546 (1949). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." <u>Swint</u> v. <u>Chambers Cty. Comm'n</u>, 514 U.S. 35, 42 (1995); <u>see also</u> <u>United States</u> v. <u>Quintana-Aguayo</u>, 235 F.3d 682, 684 (1st Cir. 2000) (per curiam). Gorski argues that the collateral order doctrine gives us jurisdiction over his appeal because the district court's discovery order will be effectively unreviewable in an end-of-case appeal.

Gorski's argument is squarely at odds with the Supreme Court's decision in <u>Mohawk Industries, Inc.</u> v. <u>Carpenter</u>, 558 U.S. 100 (2009). In <u>Mohawk</u>, the Court held that "collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege," <u>id.</u> at 108, because "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client

---

even assert attorney-client privilege over the documents the prosecution seeks from Mintz Levin, or whether the privilege is held by Legion alone. We do not resolve this issue because we lack jurisdiction over Gorski's appeal even if he is a privilege-holder.

privilege," id. at 109.  The Court reasoned that when disclosure
orders are held to be erroneous on postjudgment appeal,
"[a]ppellate courts can remedy the improper disclosure of
privileged material in the same way they remedy a host of other
erroneous evidentiary rulings: by vacating an adverse judgment and
remanding for a new trial in which the protected material and its
fruits are excluded from evidence."  Id.  Moreover, the Court
noted, immediate review of serious errors is available through a
writ of mandamus or by a contemptuous refusal to comply with the
discovery order and an appeal of the subsequent contempt order.
Id. at 111.

       Gorski attempts to distinguish Mohawk by pointing out
that if we do not hear his appeal, our decision on Legion's appeal
will become the law of the case and prevent Gorski from
relitigating the issue on appeal from final judgment.  This, Gorski
claims, makes the discovery order effectively unreviewable on
final judgment in a way that distinguishes Mohawk.  But even if
Gorski is correct about the applicability of the law of the case
doctrine -- an issue we do not decide -- the Court made it clear
in Mohawk that the availability of collateral order review is
determined by examining "the class of claims, taken as a whole."
Id. at 107.  As such, Mohawk held that parties are categorically
barred from appealing privilege-related disclosure orders under
the collateral order doctrine, notwithstanding the fact "[t]hat a

fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are 'only imperfectly reparable.'" Id. at 112 (quoting Dig. Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 872 (1994)). We do not have jurisdiction over Gorski's appeal.

Legion, a non-party to the indictment, claims appellate jurisdiction under an exception to the final order doctrine deriving from Perlman v. United States, 247 U.S. 7 (1918). Under Perlman, "a discovery order addressed to a non-party sometimes may be treated as an immediately appealable final order vis-à-vis a party who claims to hold an applicable privilege." Ogden Corp., 202 F.3d at 459. The rationale for Perlman is that when the target of a discovery order is a non-party, a party claiming the privilege cannot gain the right of appeal by itself refusing to produce discovery and being held in contempt. See id. Nor will the target of the discovery order allow itself to be held in contempt to obtain appellate review on behalf of the privilege-holder because the non-party "presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." Id. (quoting Church of Scientology v. United States, 506 U.S. 9, 18 n.11 (1992)). As such, "[c]ourts frequently have invoked Perlman when a client . . . seeks to appeal an order compelling her attorney . . . to produce allegedly privileged materials." Id.

Legion's appeal presents a classic Perlman situation. The district court has ordered Mintz Levin, a non-party, to produce documents. Legion asserts attorney-client privilege over those documents, but it cannot bring an immediate challenge to that order by allowing itself to be held in contempt because it is not the target of the subpoena at issue.[2] Nor does it seem that Mintz Levin has any intention of refusing to comply and therefore risking contempt. See id. Because Legion is a non-party, it cannot ensure that there would be any traditional final judgment from which to appeal, either. Legion is thus "powerless to avert the mischief of the order," Perlman, 247 U.S. at 13, unless we apply the Perlman exception and take appellate jurisdiction.

We have jurisdiction over the prosecution's cross-appeal under 18 U.S.C. § 3731, which provides that "[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence."

III.

In privilege cases, we review questions of law de novo, factual findings for clear error, and discretionary judgments for

---

[2]    Although there is also a subpoena against Legion, the district court's production order as to Legion has been stayed and held in abeyance pending our resolution of the appeals of the order as to Mintz Levin.  Therefore, we have before us only the part of the district court's order compelling production from Mintz Levin.

abuse of discretion.  Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002).

     The attorney-client privilege is "a privilege of a client to refuse to testify or to have his counsel testify as to confidential communications between the two made in connection with the rendering of legal representation."  In re Grand Jury Proceedings, 417 F.3d 18, 21 (1st Cir. 2005).  The crime-fraud exception "withdraws protection where the client sought or employed legal representation in order to commit or facilitate a crime or fraud."  Id. at 22.  The party invoking the crime-fraud exception "must make a prima facie showing: (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity."  In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 75 (1st Cir. 1999); see also United States v. Albertelli, 687 F.3d 439, 450 (1st Cir. 2012).  By prima facie showing, we mean "a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud."  In re Grand Jury Proceedings, 417 F.3d at 23 & n.4.  This standard may be met by "something less than a mathematical (more likely than not) probability that the client intended to use the attorney in furtherance of a crime or fraud."

_Id._ at 23.  However, it requires more than "speculation [or] evidence that shows only a distant likelihood of corruption."  _Id._

Here, we are satisfied that the reasonable basis standard is met as to both parts of the crime-fraud exception test.[3]  As to the first part, the district court correctly noted

---

[3]    Two antecedent issues are raised by Gorski's brief but not by Legion's brief.  Though we do not have jurisdiction over Gorski's appeal and Legion does not expressly adopt the arguments in Gorski's brief, we understand Gorski to make these arguments in opposition to the government's appeal, and so we address them.

The first issue is whether the district court erred in conducting an in camera review of the privileged documents at all.  The Supreme Court has held that district courts may conduct an in camera review of privileged materials upon a "good faith belief by a reasonable person," _United States_ v. _Zolin_, 491 U.S. 554, 572 (1989) (quoting _Caldwell_ v. _Dist. Court_, 644 P.2d 26, 33 (Colo. 1982)), that "_in camera_ review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies," _id._  The standard for in camera review is a "very relaxed test" that requires a lesser evidentiary showing than what is ultimately needed to pierce the privilege.  _In re Grand Jury Proceedings_, 417 F.3d at 22.  That standard was met by the prosecution's allegation that Mintz Levin's restructuring of Legion was part of a five-year ongoing scheme whose essence was that the outward structure of the company did not match its actual ownership and control.  Gorski's argument that the use of an effective date on corporate documents was not illegal and so could not have formed the basis for the in camera review is too narrowly focused, because it is the entire five-year scheme alleged in the indictment that justifies in camera review.  A jury could view the chronology as an attempt to convince the SBA that transactions took place before they did, and to dispel any reason for further SBA inquiry.

The second issue is whether the district court erred in not considering a January 2, 2014, decision by a magistrate judge not to conduct an in camera review under _Zolin_.  It is uncontested that the prosecution did not file a timely appeal of the magistrate judge's order and thereby waived its right to review under Federal Rule of Criminal Procedure 59(a).  However, the advisory committee notes on Rule 59(a) specifically provides that "[d]espite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether

that the indictment provides a reasonable basis to believe that
Gorski and/or Legion was engaged in criminal or fraudulent
activity.

As to the second part, we too have reviewed the numerous
and varied documents and agree with the district court's
characterizations. There are many communications between Gorski
and his attorneys on the "perceived need to revise [Legion's]
corporate structure." The facts concerning the chronology of the
events and the relevance of the dates to the regulatory structure
are documented. There is considerable information about the bid
protest, choices as to how to respond, and the preparation of
affidavits for submission to the government.

The district court correctly concluded that there was a
reasonable basis to believe that the attorney-client
communications "were intended by the client to facilitate or
conceal the criminal or fraudulent activity." In re Grand Jury
Proceedings, 183 F.3d at 75. Gorski allegedly orchestrated an
ongoing scheme in which, for five years, he maintained the outward
appearance that Legion was compliant with SDVOSB regulations while
retaining actual control for himself. Mintz Levin was retained to

---

or not objections are timely filed." See Fed. R. Crim. P. 59(a)
advisory committee's note to 2005 adoption; see also Thomas v.
Arn, 474 U.S. 140, 154 (1985). It was well within the district
court's discretion to decide the issue on its own, even after the
time had passed for the prosecution to appeal the magistrate
judge's order.

restructure Legion to maintain that supposed compliance with changing SDVOSB regulations. The fact that Gorski intended to continue the fraudulent scheme even after achieving outward compliance with the new SDVOSB regulations in early 2010 may be inferred from the allegation that, between July and November 2010, Gorski was in discussions with Legion's accountant to provide him with hidden additional compensation. In short, there is a reasonable basis to believe that for a five-year period running both before and after the 2010 restructuring, Gorski exercised ownership and control over Legion in excess of that which was reported to the SBA. There is also a reasonable basis to believe that, with the intent of continuing this scheme, Gorski and/or Legion sought out the services of Mintz Levin to restructure Legion and maintain Legion's outward compliance with SDVOSB regulations.

Legion argues that Gorski and/or Legion lacked the intent to use Mintz Levin's services to further or conceal criminal activity because they were merely seeking to ensure that Legion was in compliance with the new SDVOSB regulations. They contend that there is no evidence that Gorski lied to the lawyers or withheld material information from them. It is true that a reasonable inference may be drawn in favor of Gorski from the fact that he approached a reputable law firm to assist him in the restructuring and, as the district court noted, this inference may carry the day at trial. However, it is also reasonable to infer

that Mintz Levin was retained with the intent of creating outward compliance with the amended regulations so that Gorski could continue his ongoing scheme to retain hidden ownership and control. That reasonable inference suffices to meet the "something less than a mathematical (more likely than not) probability" standard, In re Grand Jury Proceedings, 417 F.3d at 23, that the prosecution had to meet to defeat the attorney-client privilege.

Legion argues that even if the above were true, the production order was overbroad because the district court did not conduct a document-by-document review to determine specifically which communications and documents were in furtherance of the criminal or fraudulent conduct. However, the district court made it clear in a status conference following the order that its decision was the result of "a document-by-document review." We too have reviewed the documents. The district court could have done a document-by-document analysis and still readily concluded that all of the documents from Mintz Levin fell within the crime-fraud exception based on a reasonable inference that the entire scope of the representation was intended by Gorski to further the crime or fraud. Gorski's ongoing scheme required Legion to be structured to maintain the appearance of compliance with SDVOSB regulations, and the entire scope of Mintz Levin's representation was related to the 2010 restructuring. As such, there was a reasonable basis to conclude that there was a complete congruence

between everything Mintz Levin did and the fraudulent purpose by Gorski that triggers the crime-fraud exception.

Our decision that a prima facie case for the crime-fraud exception has been made does not reflect a finding on the ultimate question of whether Gorski acted wrongfully. See United States v. Schussel, 291 F. App'x 336, 346 (1st Cir. 2008). Nor does it bear on the conduct or intent of the lawyers involved, because the crime-fraud exception is triggered by the intent of the client. In re Grand Jury Proceedings, 183 F.3d at 79.

IV.

In its cross-appeal, the prosecution challenges the district court's quashing of the prosecution's subpoena as to the "category three" documents, which consisted of communications between Gorski and his personal attorney, Schwartz, in relation to the 2010 restructuring. The district court reasoned that even though "[t]he basic intent of those communications is arguably the same as his communications with Mintz Levin," the crime-fraud exception does not apply to those documents because "Ms. Schwartz apparently had no role in the submission to the SBA."

The prosecution argues that the district court erred because whether or not Schwartz was involved in the submissions to the SBA relating to the bid protest was legally irrelevant. We agree. As described above, the crime-fraud exception applies upon two prima facie showings: first, that the client was engaged in

criminal or fraudulent activity; and second, that the attorney-client communications were intended by the client to facilitate or conceal the criminal or fraudulent activity. See id. at 75. The district court found that the indictment provided a reasonable basis to believe that Gorski was engaged in criminal activity, meeting the first requirement. As for the second requirement, the district court recognized that Gorski's intent with regard to Schwartz was arguably the same as his intent with regard to Mintz Levin: to perpetuate an ongoing scheme to conceal the true ownership and control of Legion over a five-year time period. The fact that Schwartz was not actually involved in the submission of documents in the bid protest or otherwise has no necessary bearing on either of those two points. Further, Schwartz predated Mintz Levin as counsel advising Gorski on Legion. The government alleges there was an earlier part of an ongoing fraud. Gorski did indeed ask her for ideas on how to "financially benefit from [his] efforts" despite the nominal restructuring and his concerns about no longer being the "primary shareholder" despite shouldering the "balance of responsibilities" after the restructuring.

Because the district court appears to have employed incorrect legal reasoning with regard to the "category three" documents, we vacate and remand that portion of the district court order for application of the correct legal standard.

V.

We dismiss Gorski's appeal for want of appellate jurisdiction. We vacate the portion of the district court order quashing the prosecution's subpoena as to the "category three" documents, and remand for further proceedings consistent with this opinion. Otherwise, we affirm the district court's order of production as to Mintz Levin. Costs are taxed against David E. Gorski and Legion Construction, Inc.