UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.  12-10338-FDS |
| | ) | |
| DAVID E. GORSKI, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM REGARDING DISQUALIFICATION OF DEFENSE COUNSEL

Pursuant to this Court's order on January 8, 2016, the United States of America hereby submits this supplemental memorandum regarding the government's motion to disqualify Attorney Tracy A. Miner.

### A.    The Disqualification Motion and Orders.

In its initial motion and subsequent pleadings in support thereof, the government moved for disqualification of trial counsel in part because attorneys from the law firm "Mintz Levin"[1] who represented Legion in a bid protest and assisted with its corporate restructuring in 2010 may be (1) witnesses in the criminal case against their client if Gorski raised an advice-of-counsel defense, and (2) called to testify about attorney-client communications and produce work product against Gorski under the crime-fraud exception.  At the time of the initial disqualification motion, Attorney Miner was a partner in Mintz Levin and two other attorneys from that firm had entered appearances on behalf of Gorski in this criminal case.

During litigation of the motion to disqualify before the Magistrate Judge, Gorski waived in open court his right to assert an advice-of-counsel defense.  In its order dated August 1, 2014, this Court nevertheless addressed the potential conflict-of-interest arising from trial counsel's representation should the defendant elect to assert an advice-of-counsel defense and attorneys

---

[1] Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC (herein "Mintz Levin").

from Mintz Levin testify at his trial.  Boiled to its essence, this Court concluded that any conflict of interest was waivable both as a constitutional matter and under the Massachusetts rules of professional conduct in the circumstances of this case.

In two other orders dated September 4 and September 12, 2014, this Court addressed the application of the crime-fraud exception to attorney-client communications between Legion/Gorski and lawyers from Mintz Levin as well as Gorski and his personal attorney, Elizabeth Schwartz.  After reviewing *in camera* documents subpoenaed from Mintz Levin and Legion pursuant to Fed. R. Crim. P. 17(c), and after hearing arguments from Gorski as well as Legion as intervener, this Court found that the crime-fraud exception applied and ordered production of certain categories of communications between Legion/Gorski and Mintz Levin. The Court did not order production of attorney-client communications between Gorski and Schwartz under the crime-fraud exception, although it acknowledged that "the basic intent of those communications" was arguably the same as Gorski's communications with Mintz Levin. This Court stayed production of the subpoenaed materials pending resolution of the ensuing interlocutory appeals.

B.      **The Appeal and Present Status of the Case.**

Legion and Gorski appealed this Court's order compelling Mintz Levin to produce any and all documents responsive to the prosecution's subpoena.[2]  The government cross appealed with respect to the suppression of the so-called "category three" documents, which pertained to communications between Gorski and Attorney Schwartz.  On December 9, 2015, the First Circuit affirmed this Court's order of production with respect to the Mintz Levin documents. The Appeals Court also vacated the portion of this Court's order quashing the subpoena compelling production of the category three documents, and remanded the matter for further proceedings consistent with its opinion.  On January 8, 2016, this court lifted its stay with respect

---

[2] The First Circuit dismissed Gorski's appeal for want of appellate jurisdiction.

to production of the communications between Legion/Gorski and Mintz Levin. The documents were produced to the government on January 12, 2016.[3] This Court currently has under advisement whether to order production of the category three documents to the government.

C.     **Vouching.**

When the government initially filed its motion to disqualify, trial counsel was a partner at Mintz Levin and two attorneys from that firm were assisting her in this criminal case. In those circumstances, the government suggested, if the defendant were to claim that he did not have the intent to defraud the United States because he hired a reputable firm like Mintz Levin to effectuate the corporate restructuring in an appropriate manner, this would lead to the untenable situation where Attorney Miner was representing Gorski as an advocate at trial while lawyer-witnesses from her firm essentially vouched for his actions or the actions of co-conspirators during the conspiracy. In effect, such a scenario would unfairly interject the credibility of trial counsel's firm and/or trial counsel at trial.

The concern for all practical matters is now alleviated. Since the date of filing of the government's initial disqualification motion, Attorney Miner has left Mintz Levin. She has previously indicated on the record that she has no present financial interest in Mintz Levin. In addition, the two attorneys from that firm who assisted her in this case have also filed withdrawals of their appearances. *See* Docket Entry 214. Thus, the jury will be unaware of the trial-counsel and lawyer-witness law firm connection provided that there is no mention of Attorney Miner's prior association with Mintz Levin during any phase of the trial.

D.     **Advice-of-Counsel Defense.**

It is the government's understanding that Gorski now intends to assert an advice-of-counsel defense. In light of the First Circuit's decision affirming this Court's order compelling

---

[3] The undersigned prosecutor was on trial in Worcester Federal Court during the week of January 11, 2016. As of the date of this pleading, the government needs additional time to conduct a thorough review of all documents produced by Mintz Levin in this case.

production of attorney-client communications, and given the strong likelihood that attorneys from Mintz Levin will be called as witnesses at trial, the question of whether the defendant can waive any actual or potential conflict of interest posed by Attorney Miner's continued representation in the circumstances of this case is now front and center.

Courts are quick to find the potential for a conflict of interest in situations where the defendant asserts an advice-of-counsel defense and the advising attorney is also representing the defendant at trial. *See United States v. Wilson*, No. 10-20581, 2011 WL 740200, at *6 (E.D. Mich. Feb. 24, 2011) ("Presenting [an advice-of-counsel] defense with the advising attorney in the position of trial counsel would give rise to the most obvious conflict of interest."). The rather obvious reason is the potential that the advising attorney or members from her firm, while representing her client at trial, could be called as witnesses to testify in regard to the advice allegedly relied on by the defendant. *See United States v. Kolodesh*, 2012 WL 1156334, at *5 (E.D. Pa. April 5, 2012) (it is a source of conflict for an attorney to be "both an advocate and a witness.") (quoting *United States v. Merlino*, 349 F.3d 144, 151 (3rd Cir. 2003).

In this case, however, Attorney Miner was not the advising attorney nor is she presently a partner at Mintz Levin. As noted above, this Court has already concluded that any conflict of interest in the circumstances of this case was waivable under the federal constitution and the Massachusetts rules of professional conduct. More specifically, the Court rejected the premise that, as a constitutional matter, "no rational defendant would knowingly and intelligently desire [Miner's] representation." (quoting *United States v. Cain*, 671 F.3d 271, 293-94 (1st Cir. 1994)). With respect to the Massachusetts ethics rules, this Court also rejected the notion that, "a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances." (quoting Mass. R. Prof'l C. 1.7 cmt. 5).

Whether Gorski's interests align with the attorney-witnesses from Mintz Levin (i.e., that the firm gave sound legal advice and he followed it), or whether he intends to claim that the firm advised him erroneously and he innocently relied upon it, remains to be seen. In either instance, the government suggests, this Court should at a minimum conduct another in-depth colloquy

with the defendant and obtain a waiver of any potential conflict of interest on the record in open court.  A proper record and a knowing and intelligent waiver will at minimum establish a heavy burden of persuasion for a future challenge to a conviction asserting ineffective assistance of counsel.  *United States v. Foster*, 469 F.2d 1, 5 (1st Cir. 1972); *see United States v. Coneo-Guerero*, 148 F.3d 44, 49 (1st Cir. 1998).

       E.      **The Crime-Fraud Exception.**

      In deciding the parties' interlocutory appeals, the First Circuit upheld this Court's conclusion that there was a reasonable basis to believe that the attorney-client communications at issue here were intended by Gorski to facilitate or conceal the fraudulent activity.  *United States v. David E. Gorski*, 14 – 1963 – 64 & 2074, slip op. at 17.  Thus, it is a near certainty that lawyers from Mintz Levin will testify at trial to these communications and their verbal interactions with Gorski.[4]  The Massachusetts ethics rules provide that, "[a] lawyer shall not represent a client if representation of that client may be materially limited ... by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." Mass. S.J.C.R. 3:07, R. of Prof'l Conduct 1.7(b).  However, as this Court has noted, "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the clients consent." *Id.* cmt. 5.

      With respect to the constitutional concern, a criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to counsel who is unimpaired by conflicting loyalties.  *Strickland v. Washington*, 466 U.S. 668, 690, 692 (1984); *United States v. Hernandez Libron*, 23 F.3d 600, 603 (1st Cir. 1994).  "'Even where an actual conflict exists,' however, a defendant 'may waive this conflict… and elect to have the attorney continued representation, so

---

[4] Assuming, of course, the attorney-witnesses have no valid Fifth Amendment privilege claim.

long as that waiver is knowing, intelligent, and voluntary.'" *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 68 (1st Cir. 2009) (quoting *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994); *see, e.g., Doherty v. United States*, 948 F. Supp. 111, 117 (D. Mass. 1996) (Judge Young noted "when a defendant knowingly selects a course of action, fully cognizant of its perils, he cannot later repudiate it simply because his case curdles. (citation omitted). Therefore, this Court rules that Doherty executed a knowing, voluntary, and intelligent waiver of his right to conflict-free counsel."). Nevertheless, a waiver by a defendant of an actual or potential conflict is not a panacea. *See Wheat*, 486 U.S. at 161–62. Where a court justifiably finds an actual conflict of interest, or a serious potential for conflict, it may decline a proffer of waiver. *See id*. On the other hand, the government bears a "heavy burden" in demonstrating that disqualification is justified, and disqualification of trial counsel "should be a measure of last resort." *See In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988) (quoting *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986)).

Here, Attorney Miner's departure from Mintz Levin and the withdrawal of Mintz Levin attorneys from this criminal case may mitigate any potential conflict of interest under the rules of ethics. There remains, however, the potential for a significant conflict of interest under the Sixth Amendment – especially if the firm's interests clash with those of the defendant. As this Court noted in its August 1, 2014, decision, Attorney Miner could have divided loyalties that might affect the advice she dispenses to Gorski or the trial strategy she elects to pursue. The corporate restructuring documents and pleadings submitted by Mintz Levin in connection with the bid protest are relevant to or constitute evidence of the §371 conspiracy charge. Mintz Levin attorneys therefore undoubtedly have an interest in the criminal case against Gorski. Having worked at the firm for more than 20 years, Attorney Miner's friendships with and loyalties to her former colleagues might be difficult to cast aside. There exists the distinct possibility that she may subconsciously circumscribe her arguments or curtail vigorous questioning during cross-examination of the attorney-witnesses, thereby reducing her role as an effective advocate on behalf of her client. Financial interests, in the form of future referrals, may still exist.

6

In this case, the government suggests, the more prudent course of action would be to disqualify Attorney Miner given the unique circumstances of this case. *Wheat*, 486 U.S. at 160-62 (federal courts are responsible for ensuring that criminal trials are "conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them" and have an interest in insulating their fairly rendered verdicts from appellate reversal for ineffective assistance of counsel). If this Court is not inclined to disqualify Attorney Miner from representing the defendant, the government respectfully offers two suggestions: first, obtain a knowing and intelligent waiver from Gorski of any potential or actual conflict of interest associated with trial counsel's continued representation of him in this matter in light of the present posture of the case, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 244 & n.32 (1973) (trial judge bears the "serious and weighty responsibility… of determining whether there is an intelligent and competent waiver by the accused" and "must investigate as long and as thoroughly as the circumstances of the case before him demand" before accepting the waiver); and second, have Attorney Megan A. Siddall, co-counsel in this case who appears to have no prior professional connection to Mintz Levin, conduct the direct examination and/or cross examination of the lawyer-witnesses from Mintz Levin. This approach, the government suggests, will help mitigate the effect of any potential or actual conflict of interest associated with Attorney Miner's continued representation of Gorski. *See United States v. Fahey*, 769 F.2d 829, 835 (1st Cir. 1985) (quoting *Cuyler v. Sullivan*, 446 U.S. 335 (1980) ("[if] a defendant has voluntarily chosen to proceed with [a potential conflict]… it is fair, if he later alleges ineffective assistance growing out of a conflict, to require that he demonstrate that a conflict of interest

actually affected the adequacy of representation.").

Respectfully submitted,


CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:     */s/William F. Bloomer*
        WILLIAM F. BLOOMER
        Assistant U.S. Attorney
        (617) 748-3100

Date: January 21, 2016

## CERTIFICATE OF SERVICE

I, William F. Bloomer, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.


/s/William F.Bloomer
WILLIAM F. BLOOMER